UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
ROOSEVELT QUINONEZ,

                Plaintiff,

     -against-

THE CITY OF NEW YORK, OFFICER JOEL GOMEZ (NYPD) SHIELD #015109, OFFICER THOMAS DIGGS (NYPD) SHIELD #020336, DETECTIVE HOMER HENRIQUEZ (NYPD) SHIELD #04550, LIEUTENANT NEFTALI BETANCES (NYPD), AND OFFICERS JOHN DOE #1-10 (THE NAME JOHN DOE BEING FICTICIOUS, AS THE TRUE NAME(S) IS/ARE PRESENTLY UNKNOWN),

                Defendant.
------------------------------------------------------------------------X

Index No.:

**COMPLAINT**

**JURY TRIAL DEMANDED**

The Plaintiff, complaining by his attorney(s), THE LAW OFFICE OF ANDREW L. HOFFMAN, P.C., respectfully shows this Court and alleges:

## INTRODUCTION

1. This is a civil rights action to vindicate the rights of Plaintiff Roosevelt Quinonez, who was wrongfully arrested and prosecuted after officers with a history of misconduct, allegedly found a ziplock bag of cocaine in his vicinity, then fabricated a totally unbelievable narrative in an effort to link him to it.

2. The ham-handed case against Roosevelt Quinonez was dismissed after prosecutors conceded that the Defendants' allegations could not be proven.

3. The individual Defendants in this case are now being sued for their respective roles in the violation of Mr. Quinonez's rights.

1

4. The City of New York is being sued for failing to properly train, supervise, and/or discipline New York City police officers, and for continuing to tolerate and defend a widely publicized departmental culture of willful indifference toward the rights of citizens.

## JURISDICTION

5. Jurisdiction is founded upon the existence of a Federal Question.

6. This is an action to redress the deprivation under color of statute, ordinance, regulation, custom, or usage of rights, privileges, and immunities secured to the Plaintiff by the Fourth and Fourteenth Amendments to the Constitution of the United States pursuant to 42 U.S.C. Section 1983 and arising under the law and statutes of the State of New York.

7. Jurisdiction is founded upon 28 U.S.C. Sections 1331, 1343(3) and 1343(4), this being an action authorized by law to redress the deprivation under the color of law, statute, ordinance, regulation, custom and usage of rights, privileges and immunities secured to Plaintiffs by the Fourth and Fourteenth Amendments to the Constitution of the United States.

## VENUE

8. Venue lies in this District pursuant to 28 U.S.C.A. Section 1391(b) (2) since the events giving rise to the claim occurred in the Southern District.

## PARTIES

9. At all times relevant and hereinafter mentioned, Plaintiff ROOSEVELT QUINONEZ was a resident of Bronx County in the City of New York.

10. Upon information and belief, at all times hereinafter mentioned, the Defendant, CITY OF NEW YORK was and still is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York, and that at all times relevant all Defendant officers were acting for, upon, and in furtherance of the business of their employer and within the scope of their employment.

11. Upon information and belief, at all times hereinafter mentioned, the Defendant, CITY OF NEW YORK, its agents, servants, and employees, operated, maintained and controlled the NEW YORK CITY POLICE DEPARTMENT, including all the police officers thereof.

12. Upon information and belief, at all times hereinafter mentioned, Defendant OFFICERS JOEL GOMEZ, THOMAS DIGGS, HOMER HENRIQUEZ,[1] LIEUTENANT NEFTALI BETANCES, and OFFICER(S) JOHN DOE #1-10 were employed by the Defendant CITY OF NEW YORK, as member(s) of its police department, assigned to the 41st Precinct.

13. The NEW YORK CITY POLICE DEPARTMENT is a local governmental agency, duly formed and operating under and by virtue of the Laws and Constitution of the State of New York and the POLICE CHIEF OF THE NEW YORK CITY POLICE DEPARTMENT is responsible for the policies, practices, and customs of the NEW YORK CITY POLICE DEPARTMENT as well as the hiring, screening, training, supervising, controlling and disciplining of its police officers and civilian employees, and is the final decision maker for that agency.

---

[1] Officer Henriquez has since been promoted to Detective.

14. This action arises under the United States Constitution, particularly under provisions of the Fourth and Fourteenth Amendments of the Constitution of the United States, and under federal law, particularly the Civil Rights Act, Title 42 of the United States Code, Section 1983, and the rights guaranteed by the Constitution and laws of the State of New York.

15. Individual Defendants in this action are being sued in both their individual and official capacities.

## STATEMENT OF FACTS

### -The Arrest-

16. On June 12, 2013, at approximately 3:00 PM, 45 year-old Plaintiff Roosevelt Quinonez was standing in a convenience store at 907 Southern Blvd., Bronx, NY, having just purchased a soda.

17. Mr. Quinonez lived in an apartment above the store, and served as a handyman for the building.

18. As Mr. Quinonez proceeded to drink his soda, the Defendant Officers Gomez and Diggs entered the store and approached him.

19. One of the officers demanded to know what Mr. Quinonez had just thrown into a nearby trashcan.

20. Mr. Quinonez replied truthfully that he had not thrown anything in the trashcan.

21. The Defendant officers then walked over to the trashcan, instantly returning with a ziplock bag containing a small amount of a substance later identified as crack cocaine.

22. Neither Mr. Quinonez's fingerprints, nor his DNA, were on the bag, as he had never had contact with it.

23. Nobody witnessed Mr. Quinonez place anything in the trashcan, as Mr. Quinonez had not placed anything in the trashcan.

24. Despite the obvious presence of surveillance cameras in the convenience store and on the street, the Defendant Officers never retrieved any surveillance video to corroborate their allegations.

25. As set forth below, the officers would later claim that they recovered the bag not from a bodega trashcan, but either on the street near Mr. Quinonez, or from the person of Mr. Quinonez.

26. Ultimately, the sole evidence linking Mr. Quinonez to the cocaine was the false word of Defendants Gomez and Diggs, as ratified by Defendants Betances and Henriquez.

### -The Officers' Version(s) of Events-

27. The officers' initial arrest report ("the Online")[2], stated simply that Mr. Quinonez was found "in possession of a quantity of a controlled substance," and charged him with Criminal Possession of a Controlled Substance in the Seventh Degree (a misdemeanor).

28. In contrast, the subsequent Complaint Report[3] charges Mr. Quinonez with the Criminal *Sale* of a Controlled Substance (a felony), which it alleges took place on a "public sidewalk."

---

[2] The Online lists Defendant Diggs as the arresting officer, Defendant Betances as the "Supervisor Approving," and Defendant Henriquez as the officer entering the report.

[3] The Complaint Report was entered by Defendant Henriquez, and lists Defendant Henriquez as the "Report[er]/Investigat[or]" and Defendant Betances as the "Supervisor Approving."

29. A Property Invoice alleges that Mr. Quinonez "through" [sic] a "clear plastic zip" to the ground.

30. An affidavit signed by Defendant Diggs in support of the final Criminal Complaint states that Defendant Gomez witnessed Mr. Quinonez standing in front of the bodega, holding a ziplock bag "containing a white, rock-like substance" in his left hand.

31. The final Criminal Complaint charged Mr. Quinonez with misdemeanor possession (as did the original Online), and said nothing about any alleged felony "sale."

32. A subsequent affidavit from the Bronx District Attorney's office alleged "officers were in an unmarked vehicle and saw the defendant walking on the street with a small ziplock bag of crack-cocaine…[t]he police therefore had reasonable cause to stop the defendant and subsequently arrest him for the crack cocaine that he was carrying in his hand."

33. The officers' inconsistent, and, frankly, incoherent case against Mr. Quinonez was summarily dismissed on or about March 28, 2014—nine months after his wrongful arrest.

-Prior Allegations of Misconduct-

**<u>Annunziata v. City of New York</u>, 13-CV-5610; Diggs and Gomez**

34. According to Mr. Annunziata's Complaint, on or about August 16, 2012, a Consolidated Edison ("Con Ed") employee, Robert Annunziata, was in the vicinity of Barry Street and Burnett Place, performing service box inspections.

35. Annunziata parked his Con Ed truck on Barry Street and took his uniform shirt off in order to take a short break.

36. Annunziata walked down on Tiffany Street without interacting with anyone or making any stops.

6

37. On his way back to his truck, he was stopped by Defendant Officer Gomez, who stood in his way and demanded to know what Annunziata was doing in the area.

38. Mr. Annunziata explained that he was working for Con Ed, and that he was walking back to his truck, which was parked around the corner.

39. Notwithstanding, Gomez continued to ask what Annunziata was doing in the area.

40. After several minutes of this, Annunziata offered to show his Con Ed identification card, whereupon Defendant Gomez grabbed Annunziata's wrist and put him against a wall.

41. Defendant Diggs then ran toward Annunziata and punched him in the face, knocking him to the ground.

42. The Defendant Officers continued to assault and batter Annunziata while he was on the ground.

43. Diggs and Gomez then placed Annunziata in handcuffs, and Diggs proceeded to search Annunziata's pockets and wallet; upon realizing Mr. Annunziata had been telling the truth about working for Consolidated Edison, the officers removed the handcuffs and released him without issuing any summons or charges.

44. No paperwork was completed by the Defendant Officers to memorialize the incident.

45. However, Annunziata immediately went to the 41st Precinct, filed a formal complaint, and an investigation was initiated by the Citizen's Complaint Review Board ("CCRB").

46. Gomez denied Annunziata's account to CCRB, claiming that Annunziata's injuries were incurred when "he fell while walking backward."

47. Both officers testified that Diggs "did not interact with Annunziata at all."

48. The CCRB ultimately concluded that that the officers' testimony "was not consistent with Annunziata's injuries." Furthermore, claims that Diggs had nothing to do with Annuniziata lacked "credibility."

49. Nevertheless, only Diggs was punished—for "unlawfully searching Annunziata"—and his punishment was limited to the loss of just 4 vacation days.

50. The New York City Law Department defended Diggs and Gomez in Mr. Annunziata's lawsuit against them before finally settling for an undisclosed amount—after a year and nine months of litigation.

51. Upon information and belief, neither Diggs nor Gomez was subject to any further discipline or retraining[4] after Annunziata's case resolved, and both continue to be employed by the New York City Police Department.

52. Defendants Betances and Henriquez have also been named in prior misconduct suits,[5] and upon information and belief, as with Diggs and Gomez, neither has been disciplined nor subject to retraining.

### AS AND FOR THE FIRST CAUSE OF ACTION
### ON BEHALF OF PLAINTIFF AGAINST DEFENDANTS DIGGS AND GOMEZ

**Violation of Constitutional Rights Under Color of State Law
—False Arrest and Imprisonment—**

53. Plaintiff incorporates by reference and realleges each and every allegation stated in Paragraphs 1 through 52.

---

[4] See Vann v. City of New York, 72 F.3d 1040, 1049 (2d Cir. 1995) ("[D]eliberate indifference may be inferred if the complaints [of wrongdoing] are followed by no meaningful attempt on the part of the municipality to investigate or to forestall further incidents.").

[5] See e.g., for Defendant Betances: Garnett v. City of New York, et al., 13-CV-07083; Vasquez v. City of New York, et al., 14-CV-3333; Defendants Betances and Henriquez: Martinez v. Henriquez, et al., 13-cv-8753.

54. The Fourth Amendment of the United States Constitution protects citizens from unreasonable searches and seizures by government officials, and prohibits law enforcement officers from arresting and detaining individuals in the absence of appropriate authorization.  The Fourth Amendment also precludes police officers from conducting arrests in the absence of probable cause to believe that a crime has been committed.

55. Defendants arrested Roosevelt Quinonez absent probable cause.

56. The actions of Defendants violated Roosevelt Quinonez's rights under the United States Constitution.  Given the total absence of any legal justification for arresting Roosevelt Quinonez, it was not objectively reasonable, arguably or otherwise, to arrest Roosevelt Quinonez for anything on June 12, 2013.

57. Defendants' actions were motivated by bad faith and malice.

58. This conduct on the part of Defendants also represents a violation of 42 U.S.C. § 1983, given that said actions were undertaken under color of state law.

59. As a direct and proximate result of the unconstitutional acts described above, Plaintiff Roosevelt Quinonez has been substantially injured.

**AS AND FOR THE SECOND CAUSE OF ACTION
ON BEHALF OF PLAINTIFF AGAINST ALL DEFENDANTS**

**Violation of Constitutional Rights Under Color of State Law
—Malicious Prosecution—**

60. Plaintiffs incorporate by reference and reallege each and every allegation stated in Paragraphs 1 through 59.

61. The Fourth Amendment of the United States Constitution protects citizens from overzealous and malicious prosecution by government officials without probable cause.

62. Roosevelt Quinonez was prosecuted, without probable cause, relative to the June 12, 2013 arrest, as set forth herein.

63. Said charges resulted in a loss of liberty for Mr. Quinonez, as he was incarcerated for approximately three days, and incurred substantial financial and emotional damages as a direct result.

64. Mr. Quinonez's criminal proceeding was terminated in his favor, as the charges in question were dismissed outright.

65. Defendants' actions were motivated by bad faith, malice, and/or deliberate indifference to the rights of Roosevelt Quinonez.

66. This conduct on the part of Defendants also represents a violation of 42 U.S.C. § 1983, given that said actions were undertaken under color of state law.

67. As a direct and proximate result of the unconstitutional acts described above, Plaintiff Roosevelt Quinonez has been substantially injured.

## AS AND FOR THE THIRD CAUSE OF ACTION
## ON BEHALF OF THE PLAINTIFF AGAINST ALL DEFENDANTS

**Violation of Constitutional Rights Under Color of State Law
-Denial of Constitutional Right to Fair Trial Due to Fabrication of Evidence-**

68. Plaintiff incorporates by reference and realleges each and every allegation stated in Paragraphs 1 through 67.

69. Defendants created false evidence against Plaintiff Roosevelt Quinonez, as herein described.

70. Defendants forwarded false evidence and false information to prosecutors in the Bronx County District Attorney's office.

71. Defendants misled the judge and the prosecutors by creating false evidence against Plaintiff Roosevelt Quinonez.

72. In creating false evidence against Plaintiff Roosevelt Quinonez, in forwarding false evidence and information to prosecutors, Defendants violated Plaintiff's constitutional right to a fair trial under the Due Process Clause of the Fifth, Sixth and Fourteenth Amendments of the United States Constitution.

73. This conduct on the part of Defendants also represents a violation of 42 U.S.C. § 1983, given that said actions were undertaken under color of state law.

74. As a direct and proximate result of the unconstitutional acts described above, Plaintiff Roosevelt Quinonez has been substantially injured.

## AS AND FOR THE FOURTH CAUSE OF ACTION
## ON BEHALF OF THE PLAINTIFF AGAINST ALL DEFENDANTS

**Violation of Constitutional Rights Under Color of State Law
-Conspiracy to Violate Plaintiff's Civil Rights-**

75. Plaintiff incorporates by reference and realleges each and every allegation stated in Paragraphs 1 through 74.

76. Defendant officers, as state actors in their individual capacities pursuing personal interests wholly separate and apart from that of the City of New York or New York City Police Department, conspired together, reached a mutual understanding, and overtly acted in concert to undertake a course of conduct violative of the Plaintiff's constitutional rights by:

    a. Agreeing to deliberately and maliciously fabricate evidence against the Plaintiff, and falsely arrest and prosecute him;

    b. Agreeing not to intervene with any of the police misconduct directed at Mr. Quinonez;

77. This conduct on the part of Defendants also represents a violation of 42 U.S.C. § 1983, given that said actions were undertaken under color of state law.

78. Defendants' actions were motivated by bad faith, malice, and/or deliberate indifference to the rights of Ms. Quinonez.

79. As a direct and proximate result of the unconstitutional acts described above, the Plaintiff has been substantially injured.

## AS AND FOR THE FIFTH CAUSE OF ACTION
## ON BEHALF OF THE PLAINTIFF AGAINST ALL DEFENDANTS

### Violation of Constitutional Rights Under Color of State Law
### -Failure to Intercede-

80. Plaintiff incorporates by reference and realleges each and every allegation stated in Paragraphs 1 through 79.

81. In creating false evidence against Plaintiff Roosevelt Quinonez, in forwarding false evidence and information to prosecutors, and in providing false and misleading testimony, Defendants violated Plaintiff's constitutional right to a fair trial under the Due Process Clause of the Fifth and Fourteenth Amendments of the United States Constitution.

82. The actions of Defendants detailed above violated the Plaintiff's rights under the United States Constitution.  It is widely recognized that all law enforcement officials have an

affirmative duty to intervene to protect the clearly established constitutional rights of citizens from infringement by other law enforcement officers in their presence.

83. At all times relevant herein, the right to be free from deprivations of liberty interests caused by unjustifiable criminal charges and procedures were clearly established constitutional rights that a reasonable person would have known.

84. Defendants' actions were motivated by bad faith and malice, and/or deliberate indifference to the rights of Roosevelt Quinonez.

85. This conduct on the part of Defendants also represents a violation of 42 U.S.C. § 1983, given that said actions were undertaken under color of state law.

86. As a direct and proximate result of the unconstitutional acts described above, Plaintiff Roosevelt Quinonez has been substantially injured.

### AS AND FOR THE SIXTH CAUSE OF ACTION
### ON BEHALF OF THE PLAINTIFF AGAINST DEFENDANT CITY OF NEW YORK

**Violation of Constitutional Rights Under Color of State Law
-Implementation of Municipal Policies, Practices, and Customs that Directly Violate Constitutional Rights, Failure to Implement Municipal Policies to Avoid Constitutional Deprivations and Failure to Train and Supervise Employees
Under Color of State Law-**

87. Plaintiff incorporates by reference and realleges each and every allegation stated in Paragraphs 1 through 86.

88. Upon information and belief, Defendants City of New York, Betances, and Doe #1-10, who were supervisors and final decision makers, as a matter of policy, practice, and custom, have acted with a callous, reckless and deliberate indifference to the Plaintiff's constitutional rights and laws of the United States, in that they failed to adequately discipline, train, supervise or otherwise direct police officers concerning the rights of

citizens, allowed or encouraged employees to fabricate evidence against the Plaintiff, allowed or encouraged failures to disclose exculpatory evidence, allowed or encouraged the forwarding of false or otherwise unreliable evidence to prosecutors, and allowed or encouraged officers to testify falsely.

89. In the alternative, and upon information and belief, Defendants City of New York, Betances, and Doe #1-10 instituted policies addressing the topics listed above, but through a culture of gross negligence, carelessness, malice, and/or the enforcement of illegal and immoral arrest quotas, demonstrated a deliberate and willful indifference to the constitutional rights of the Plaintiff.

90. Upon information and belief, from approximately 2008 to 2009, Officer Adrian Schoolcraft secretly recorded numerous roll calls at the precinct in which superiors urged officers to manipulate the "stats" the department was under pressure to produce: specifically, officers were told to arrest people who were doing little more than standing on the street. After voicing his concerns, Schoolcraft was allegedly harassed and reassigned to a desk job. After he left work early one day, a SWAT unit is alleged to have illegally entered his apartment, physically abducted him and forcibly admitted him to a psychiatric facility, where he was held against his will for several days. In 2010, Schoolcraft released the audio recordings to *The Village Voice*, leading to the reporting of a multi-part series titled *The NYPD Tapes*. That same year Schoolcraft filed a lawsuit against the NYPD and Jamaica Hospital. In 2012 *The Village Voice* reported that a 2010 unpublished report of an internal NYPD investigation found the 81st precinct had evidence of quotas.

91. Upon information and belief, in or about July of 2013, the Kings County District Attorney's efforts substantially expanded, as the office announced the formation of an unprecedented panel of former prosecutors, professors, and retired judges to review as many as 50 convictions involving a former Kings County detective, Louis Scarcella, who is alleged to have regularly sought false statements from witnesses, and whose work appears to have sent an array of innocent citizens to prison.

92. Upon information and belief, another former Kings County Detective, Michael Race, whose work has also been linked to the conviction of innocents, has been quoted in press accounts as stating that of the 750 murder investigations he ran, only one was "done the correct way, A to Z."

93. Long time Kings County District Attorney Charles Hynes was recently voted out of office amidst widespread[6] allegations of misconduct, and he may ultimately be indicted.[7]

94. In August of 2013, federal Judge Shira A. Sheindlin of the Southern District of New York found the New York City Police Department resorted to a "policy of indirect racial profiling" as officers routinely stopped "blacks and Hispanics who would not have been stopped if they were white." The Plaintiff in this case is Hispanic.

95. It is also true that following the landmark Floyd v. City of New York, 959 F.Supp. 2d 540 (S.D.N.Y. 2013), Judge Scheindlin appointed a monitor to oversee the N.Y.P.D.'s compliance with Court Ordered remedies. (Id. at 543.) While the specific subject of

---

[6] See e.g., Charles Hynes, Scandal-Plagued District Attorney, Faces Verdict at the Polls, ProPublica, September 6, 2013, available at http://www.huffingtonpost.com/2013/09/06/charles-hynes-brooklyn-district-attorney-election_n_3881395.html; Brooklyn DA Charles Hynes in the Hot Seat for Protecting Prosecutor Who Imprisoned Innocent Man, New York Daily News, November 16, 2012, available at http://www.nydailynews.com/new-york/b-klyn-da-charles-hynes-hot-seat-wrongful-conviction-article-1.1203342; Ex-Brooklyn Prosecutor Charles J. Hynes Accused of Misues of Funds, New York Times, available at http://www.nytimes.com/2014/06/03/nyregion/charles-hynes-brooklyn-district-attorney-inquiry.html.

[7] Indictments Looming in Probe of ex-Brooklyn D.A. Charles Hynes, New York Post, May 28, 2016, available at http://nypost.com/2016/05/28/indictments-looming-in-probe-of-ex-brooklyn-da-charles-hynes/.

"stop and frisk" in Floyd is not specifically at issue in the present case, the related issue of inadequate monitoring and supervision of officers certainly is—and it is notable that the N.Y.P.D. monitor's most recent (2/16/2016) report emphasized that departmental reforms "need[] to be communicated and reinforced better, not just at the top, but throughout the Department….Ultimately, this is a challenge of leadership, particularly for those who supervise officers engaged in day-to-day enforcement activities—sergeants, their immediate supervisors, and the precinct and unit commanders who set the tone for those under them.  This challenge implicates every aspect of the court orders and the parties' agreements, and it will not be met without changes in policies, training, supervision, and all the ways the NYPD incentivizes good police behavior and discourages unacceptable behavior.  This is a large task that will take time and substantial effort to accomplish."

96. In 2011, some two-dozen Bronx-based NYPD officers were subject to criminal charges[8] involving allegations of "fixing" tickets for friends and relatives.

97. Upon information and belief, in July of 2012, after discovering that many people arrested on charges of criminal trespass at Bronx County housing projects were innocent, even though police officers had provided written statements to the contrary, the Bronx district attorney's office quietly adopted a policy[9] of no longer prosecuting people who were stopped at public housing projects and arrested for trespassing, unless the arresting officer was interviewed to ensure that the arrest was warranted.

---

[8] See Big Inquiry Into Ticket-Fixing in New York, New York Times, April 17, 2011, available at http://www.nytimes.com/2011/04/18/nyregion/ticket-fixing-by-police-investigated-in-new-york.html?_r=0&adxnnl=1&adxnnlx=1400166713-OIwMCI6A6jnLyJC00DdeoQ

[9] Prosecutor Deals Blow to Stop and Frisk Tactic, New York Times, September 25, 2012, available at http://www.nytimes.com/2012/09/26/nyregion/in-the-bronx-resistance-to-prosecuting-stop-and-frisk-arrests.html?pagewanted=all

98. The nature, regularity, and scale of such revelations, and the extraordinary efforts being undertaken in response to a highly publicized slew of wrongful convictions, gives rise to an inference of systemic incompetence and corruption on the part of the New York City Police Department, as such a legacy of injustices cannot plausibly be laid at the feet of a few rogue officers.

99. Defendant(s) also, upon information and belief, demonstrated deliberate indifference to the rights of those arrested in the City of New York by failing to adequately hire, screen, train, and supervise officers in Bronx County and the 41st Precinct.

100. The policies, procedures, customs and practices of the above-referenced Defendants violated the Constitutional rights of the Plaintiff under the Fourth, Sixth, and Fourteenth Amendments of the United States Constitution.

101. This conduct on the part of Defendants also represents a violation of 42 U.S.C § 1983, given that said actions were undertaken under color of state law.

102. Upon information and belief, none of the Defendants named herein have been disciplined in any way for their actions relative to the Plaintiff; nor has the Internal Affairs Bureau undertaken an investigation of the events complained of herein.

103. As a direct and proximate result of the unconstitutional acts described above, the Plaintiff has been irreparably injured.

## DEMAND FOR PUNITIVE DAMAGES

104. The actions of Defendants described herein were extreme and outrageous, and shock the conscience of a reasonable person. Consequently, an award of punitive damages is

appropriate to punish the Defendants.  The Plaintiffs do not seek punitive damages against the City of New York.

## DEMAND FOR TRIAL BY JURY

105. The Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Roosevelt Quinonez requests that this Honorable Court grant him the following relief:

A. A judgment against Defendants Gomez, Diggs, Henriquez, Betances and Doe(s) for compensatory damages, and punitive damages in an amount to be determined by a properly charged jury;

B. A judgment in favor of Plaintiff against Defendant City of New York for compensatory damages in an amount to be determined by a properly charged jury;

C. A monetary award for attorneys fees and costs of this action, pursuant to 42 U.S.C. § 1988;

D. Any other relief this Court finds to be just, proper, and equitable.

Dated:  New York, New York          Respectfully Submitted By:
       June 8, 2016

                                           The Law Office of Andrew L. Hoffman, P.C.
                                           By:

                                           _____/s/_____

                Andrew L. Hoffman, Esq.
                SDNY Bar Code Number: AH2961
                261 Madison Avenue, 12 Floor
                New York, New York 10016
                T:     (212) 736-3935
                E: ahoffman@andrewhoffmanlaw.com